GULF STATES CREOSOTING COMPANY *v.* LEWIS

No. 40342          January 14, 1957          91 So. 2d 849

*Hannah, Simrall & Aultman,* Hattiesburg, for appellant.

*O. B. Triplett, Jr.,* Forest, for appellee.

McGEHEE, C. J.

On November 29, 1950, the appellee J. S. Lewis was employed by the appellant Gulf States Creosoting Company of Wilmington, Delaware, to purchase cross ties for the appellant, some of which were being sold to the New York Central Railroad Company. The appellee was to purchase ties for the tie yards of the appellant at Forest, Sebastopol, Tuscola and Walnut Grove, Mississippi, for which he was to receive 10¢ per tie commission on all ties inspected, accepted and loaded on cars. A written contract was entered into to that effect on December 1, 1950, which contained the following pertinent provision:

"It is distinctly agreed by and between the Company and the Operator (J. S. Lewis), that any and all ties rejected (with the exception of season splits, checks, and stack rot, caused by delayed shipping) and all loss of grade due to degradation by inspector will be charged back to Operator's commission."

This suit was brought by the complainant J. S. Lewis by an attachment in chancery against the nonresident corporate defendant and against Joe Barron, its local tie yard auditor, as well as against a local garnishee. The period of operation was from about December 1, 1950, to August 1, 1952. The complainant did not file a written contract as an exhibit to his bill of complaint, but merely attached as an exhibit thereto a letter of November 30, 1950, written by one of its supervisors at Hattiesburg, Mississippi, to its general auditor, A. D. Burton, at Louisville, Kentucky, advising the latter of the foregoing quoted provision in the written contract.

It was sought by the original bill to recover the sum of $1,135.80 in "gains" in grade of the ties which the appellee had purchased from the tie producers in the vicinity of the yards, and to recover the value of 3,450 "rejects" representing ties rejected because of season splits, checks, stack rot and delayed shipping of the value of $5,175. Prior to the conclusion of the trial the bill was amended so as to make a claim for 4,892 rejects of the value of $5,822.30. The appellant had filed a cross bill along with its answer, wherein it sought to recover of the appellee $3,883.15 which it alleged had been paid to the appellee as gains during 1950 and 1951, pursuant to the yard audits made by its auditor Joe Barron, and which the cross-complainant alleged had been paid to the appellee through mistake, inadvertence or oversight.

The bill of complaint was not demurred to on the ground that there had not been attached thereto a copy of the written contract of December 1, 1950, since the complainant had not sued on the said contract by any specific reference thereto. The written contract, however, was filed by the appellant as an exhibit to the cross bill and it was introduced in evidence by the appellee on the trial. The record is quite voluminous, consisting of five volumes of pleadings and testimoney, and in addition thereto numerous original exhibits were sent up as a part of the record on appeal.

Without undertaking to analyze the testimony of the various witnesses in the case, we deem it sufficient to say that while several witnesses contradicted the testimoney of the appellee on some of the material issues, he was sufficiently corroborated by numerous facts and circumstances in the case to preclude us from disturbing the decree rendered in his favor on the ground that it could be said that it was so against the overwhelming weight of the evidence as to show that the finding of the chancellor was manifestly wrong. The result is that the principal question for our decision on this ap-

peal is as to whether or not the decree of the trial court awarded relief to the appellee in excess of that which was allowable under the pleadings.

The number of ties purchased by the appelle for the appellant were in excess of 135,000. The appellant makes the point that under the written contract there was no agreement for the appellee to be paid for any gains in the grade of the ties when they were upgraded from the grade at which he had purchased the same for the appellant; that the contract merely provided that if the ties were degraded the losses thereon were to be charged back to the appellee's commission. The chancellor evidently found that the parties had given a practical construction to the contract from the beginning thereof and covering a period of thirteen months thereafter, whereby the appellant paid the appellee for gains resulting from the upgrading of his ties, and that the appellant finally discontinued, during the year 1952, paying for the gains on the sole ground that the gains were larger than they had been during the year 1951. We do not think that the proof for the appellant was sufficient to show that the gains were paid for a period of thirteen months through mistake, inadvertence or oversight since the regular reports sent from the tie yards to the office of the general auditor at Louisville, Kentucky, and which he testified always "came over my desk" disclosed that the company was paying for these gains. Moreover, the appellee testified that after he began work he was assured by the yard auditor, yard superintendent, and even by the president of the company, that while he would be charged with his losses sustained in the downgrading of ties, he would receive his gains due to any upgrading thereof.

It is undisputed that the appellee was not given credit for any ties which had been rejected because of "season splits, checks, and stack rot, caused by delayed shipping", whereas a witness for the appellant, the rail-

road tie inspector for the New York Central Railroad Company, testified that at least 80% to 85% of all tie rejects were due to those causes. Complaint is also made that the appellee did not grade his ties, and it is shown that over a period of three or four months during the entire period he graded them all as number 3 ties, but otherwise the loading foreman, as a witness for the appellant, testified that the appellee graded his ties and that he graded them "pretty close in line" with the railroad inspector's grading.

In other words, we think that the testimony presented a case peculiarly for the determination of the trier of facts, and this leaves for our determination the remaining question, if not the primary question in the case, of determining whether or not the relief awarded to the appellee was in excess of that which was allowable under the pleadings.

We have not overlooked the contention of the appellant that unauthorized advances on ties were made by the appellee to the tie producers. We have carefully considered this contention and we are of the opinion that the record discloses that the chancellor took into account all advances that were allegedly made as "advances on ties", and where some of the advances were made by the appellee for other purposes. He was charged with the unauthorized advances of the company's funds in the amount of the decree rendered.

Although the bill of complaint did not specifically allege that a subsequent verbal contract was entered into whereby the written contract was modified by agreement, it does allege that:

"Shortly following the date of his employment, the complainant was informed by the defendant, Gulf States Creosoting Company, that the ties purchased by the complainant would be regraded by the defendant, Gulf States Creosoting Company, and by the tie inspector for New York Central Railroad Company, to whom all of said ties were being sold by the said defendant corpora-

tion and that the base commission due the complainant as evidenced by the terms set forth in the aforesaid letter, would be increased or diminished by such regrading but that the final inspection and grade placed upon said ties by the New York Central Railroad Company would be the determining grade upon which a final adjustment would be made with complainant.

"Pursuant to said understanding, which was assented to by complainant, the defendant, Gulf States Creosoting Company, during 1950 and during all of 1951 made settlements with complainant by allowing him his base commission of 10¢ per tie and by allowing him all gains in the price of said ties caused by upgrading and by charging him with all losses in the price of said ties caused by degrading or downgrading; and during all of said time, the final grading made by the inspector for New York Central Railroad Company was the basis upon which settlement was made with the complainant."

We are all of the opinion that these allegations are sufficient to render the proof admissible as to the construction of the contract given by the parties after the appellee began his employment—a construction acquiesced in for at least thirteen months thereafter.

There was proof that tie producers unloaded on the yards approximately 1,500 ties which had been rejected and were discarded, but which the appellee reworked, and since they were accepted and used by the appellant among the ties shipped, the appellee was entitled to be paid therefor. Had we heard all of the witnesses testify, we may, or we may not have, reached a different conclusion as to the amount which the complainant was entitled from that reached by the chancellor. Nevertheless, we are unable to say that his adjudication as to the facts was manifestly wrong. Therefore the decree appealed from must be affirmed.

Affirmed.

*Lee, Arrington, Ethridge* and *Gillespie,* JJ., concur.